IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Mauricio E. Weber, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 8:12-cv-02922-TMC-JDA |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Arlette Jones, FNU Ham, Garry L. Bryant, | ) | |
| FNU Hankins, FNU Collins | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 40.] Plaintiff is a pretrial detainee in the custody of the Anderson County Detention Center ("ACDC"). [Doc. 1.] Plaintiff is proceeding *pro se* and brought this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on October 9, 2012, alleging deprivation of his due process rights because he has been placed in punitive segregation without notice or a hearing, deprivation of his constitutional rights because he is not allowed outdoor exercise, phone calls, or mail access, deprivation of appropriate grievance procedures and race discrimination [Doc. 1.] Defendants filed the instant motion for summary judgment on April 8, 2013. [Doc. 40.] On that same date, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary

judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 41.]  On May 9, 2013, Plaintiff filed a response in opposition to Defendants' motion.  [Doc. 54.]  Accordingly, the motion is ripe for review.

## BACKGROUND

Plaintiff has been detained at ACDC since August 11, 2010, awaiting trial. [Doc. 1 at 11.][1] He claims that he has "spent his entire detention subjected to punitive conditions so extreme and enduring that Defendant Jones's, et al. objective is obvious: to degrade and deteriorate Plaintiff's physical, emotional and psychological health and well-being."  [Id.] Plaintiff alleges that Officer Doyle ("Doyle") bypassed his cell when asking the detainees if they wanted outdoor exercise. [Id. at 13.]  Additionally, Plaintiff claims that Doyle told Plaintiff that he was on lockdown because of possession of contraband. [Id. at 14.] Plaintiff thought Doyle was using lockdown as an excuse not to give Plaintiff exercise time, but Officer Murray[2] ("Murray") informed Plaintiff that he was on lockdown until further notice. [Id.]  Plaintiff asked Murray how Plaintiff could be placed on lockdown without the opportunity for a disciplinary hearing, and Murray told Plaintiff to file a grievance. [Id. at 14–15.] Plaintiff alleges that he has been housed in a portion of the ACDC that has been

---

[1] Defendants argue that some of Plaintiff's facts in his Complaint date back to 2001 and any claims arising from those facts are time barred. Because § 1983 does not specify a statute of limitations, the Supreme Court has counseled that, "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249–50 (1989) (footnote omitted); *see Wilson v. Garcia*, 471 U.S. 261, 266–69 (1985), *partially superseded by statute as stated in Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377–78, 382 (2004); *Jersey Heights Neighborhood Ass'n v. Glendening*, 174 F.3d 180, 187 (4th Cir. 1999) ("It is well-settled that sections 1983 and 1985 borrow the state's general personal injury limitations period . . . ." (citations omitted)).  In South Carolina, the residual statute of limitations for personal injury actions is three years.  S.C. Code Ann. § 15-3-530.  Therefore, while the Court agrees that any claims arising before October 9, 2009 would be time barred, Plaintiff's claims for relief involve facts from his 2010 detention onward and thus are not barred.

[2] Neither Doyle or Murray are named Defendants in this action.

condemned by the South Carolina Department of Health and Environmental Control ("DHEC") and that his cell has puddles of urine and feces and there is lead paint on the floor and bars of the cell. [*Id.* at 15.]  Further, Plaintiff reports that there is mold throughout the facility and inadequate ventilation. [*Id.* at 16.]  He complains there is inadequate lighting, which has caused him deteriorating vision and eye strain. [*Id.*]

Plaintiff also alleges that he is representing himself in his upcoming trial and has been deprived of the use of the phone to contact witnesses. [*Id.* at 17.]  He claims that in attempting to file grievances about the above facts, he has been forced to purchase stamped envelopes to mail his grievances, which he asserts is unconstitutional. [*Id.* at 18–20.] Plaintiff claims the Defendants are retaliating against him for using the grievance and litigation processes. [*Id.* at 21.] Plaintiff also states that his grievance appeals have been confiscated and his complaints have not been fully addressed. [*Id.* at 23.] Plaintiff also asserts that he has been racially discriminated against because he was put in lockdown for having an ink pen while another detainee caught with pornography was only given three days in lockdown. [*Id.* at 24.]

Plaintiff claims he is entitled to relief because the actions of Defendants Hankins and Collins in placing him on lockdown without disciplinary charges or a hearing denied him his due process rights in violation of the Fourteenth Amendment. [*Id.* at 25.] He also asserts his Fourteenth Amendment rights were violated when Hankins and Collins deprived him of outdoor exercise and telephone calls, and when Hankins and Collins placed him in lockdown for more time than "a detainee of the opposite race." [*Id.* at 26.] He claims Defendants Bryant, Jones and Ham failed to "curb the known pattern of placing pre-trial detainees in punitive segregation." [*Id.*] Finally, he asserts that Defendant Bryant violated

3

his constitutional rights by requiring him to purchase stamps in order to file grievances. [*Id.* at 27.] Plaintiff requests damages and injunctive relief.

## APPLICABLE LAW

**Liberal Construction of *Pro Se* Complaint**

Plaintiff brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam). Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any

4

> rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements:

(1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the

United States" and (2) that the defendant "deprived [him] of this constitutional right under

color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*,

249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

>        The under-color-of-state-law element, which is equivalent to the "state action"

requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured
> by the Constitution are protected only against infringement by
> governments.  This fundamental limitation on the scope of
> constitutional guarantees preserves an area of individual
> freedom by limiting the reach of federal law and avoids
> imposing on the State, its agencies or officials, responsibility
> for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653,

658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the

deed of an ostensibly private organization or individual" may at times be treated "as if a

State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic

Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only

if, there is such a 'close nexus between the State and the challenged action' that seemingly

private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v.

Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged

constitutional deprivation "caused by the exercise of some right or privilege created by the

State or by a rule of conduct imposed by the State or by a person for whom the State is

5

responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

7

**Liability Based On a Theory of Supervisory Liability**

Initially, the Court notes Plaintiff failed to allege any specific action or inaction by Ham.  [*See* Doc. 1.]  In an abundance of caution, the Court considers the Complaint as stating a claim against Ham under a theory of supervisory liability.  Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983).  A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.[3]

---

[3] Stated differently,

> "[A]bsent an allegation that a named defendant has personally subjected the plaintiff to a deprivation of his constitutional rights or has caused the conduct complained of or participated in some manner in the allegedly unlawful actions of his employee or subordinate officer, this Court has held a complaint insufficient to state a claim against such defendant under § 1983."

*Thompson v. McCoy*, 425 F. Supp. 407, 411 (D.S.C. 1976) (quoting *Knipp v. Weikle*, 405 F. Supp. 782 (N.D. Ohio 1975)).  A plaintiff's burden to establish a claim based on supervisory liability is a heavy one; in fact, the Supreme Court may have entirely abrogated supervisory liability in *Bivens* actions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 693 (2009) (Souter, J., dissenting) ("Lest there be any mistake, . . . the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely.  The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects.").  A *Bivens* action "is the 'federal analog to suits brought against state officials under . . . § 1983.'"  *Id.* at 675–76 (quoting *Hartman v. Moore*, 547 U.S. 250, 254 (2006)).  Therefore, the Supreme Court's reasoning may extend to abrogate supervisory liability in

*Id.* (citations omitted).  Plaintiff has failed to allege any facts to demonstrate any personal or supervisory wrongdoing by Ham, and therefore, Ham is entitled to summary judgment.

**Plaintiff's Claims of Retaliation and Race Discrimination**

To the extent that Plaintiff's allegations that Defendants acted with deliberate malice and indifference toward Plaintiff state a claim of retaliation for Plaintiff filing lawsuits or grievances against Defendants, Plaintiff has failed to create a genuine issue of material fact.  To state a claim that is not legally frivolous, a plaintiff whose cause of action is based on retaliation must "allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (citing *Neitzke v. Williams*, 490 U.S. 319, 328 (1989)).  Moreover, courts treat with skepticism retaliation claims by prisoners because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct."  *Id.* at 74.

Plaintiff alleges that Defendants' retaliation was in response to other lawsuits and grievances that Plaintiff had filed against Defendants.  [Doc. 1 at 3.]  A prisoner has a constitutionally protected right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977) (citing *Ex parte Hull*, 312 U.S. 546 (1941)).  To state a claim of infringement of that right, a prisoner must include in his complaint factual allegations that tend to support his claim of deprivation of access.  *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989).  "A

---

§ 1983 actions as well as *Bivens* actions.  *See Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Iqbal*, supervisory liability may no longer be a viable § 1983 claim).

prisoner must also identify an actual injury resulting from official conduct." *Strickler v. Waters*, 989 F.2d 1375, 1382–85 (4th Cir. 1993).[4]

While Plaintiff states a non-legally frivolous claim, Plaintiff fails to create a genuine issue of material fact because he has failed to state an injury resulting from Defendant's alleged retaliation. Plaintiff did not allege any facts in his Complaint that tend to show Defendant's alleged retaliation impeded Plaintiff's access to the courts or that he was unable to file his lawsuit because he had to buy stamps. Moreover, Plaintiff failed to present any facts in any affidavits or other submissions to the Court that tend to show an injury with respect to Plaintiff's access to the courts. Therefore, Plaintiff has not shown specific facts that indicate that there is a genuine issue for trial with respect to Plaintiff's retaliation claim.

Additionally, Plaintiff has alleged no specific facts demonstrating race discrimination. First, Plaintiff does not specify his race or the race of the other detainees who were allegedly treated differently. Second, Plaintiff fails to allege any facts to support his conclusory allegations that he was placed in lockdown because of his race and not his own conduct. *See Donohue v. Ray*, Case No. 7:11-cv-227, 2011 WL 2441294, at *3 (W.D. Va. June 13, 2011). Moreover, Defendants have testified that Plaintiff was put in a single cell because of his behavior. [Doc. 40-2 ¶¶ 10-12.] Officer Collins testified that Plaintiff was only put on actual lockdown once, for masturbating in front of another officer, but that Plaintiff was not placed on lockdown for more than 72 hours. [Doc. 40-4 ¶ 2.] Further, Collins

---

[4]

As discussed below, to the extent Plaintiff is articulating that he was retaliated against in the ACDC's grievance procedure, there is no constitutional right to a grievance procedure and thus cannot be the basis for a § 1983 claim.

testified that when he found Plaintiff with contraband (a pen), he prepared an Incident Report but did not place Plaintiff on lockdown. [*Id.* ¶ 3.]　Plaintiff has articulated no facts to support a race discrimination claim and summary judgment is therefore appropriate.

**Conditions of Confinement Claims**

Plaintiff complains about the conditions of his confinement at ACDC, alleging he was subjected to unsanitary conditions and mental and physical anguish because his cell was in a condemned area, there was lead paint on his cell bars, he had very little light, poor ventilation and there was urine and fecal matter on the floor.　[Doc. 1 at 15–17.]　He also alleges that he was improperly detained in solitary lockdown rather than in general population. [*Id.* at 25.]　Defendants contend that DHEC has never condemned Plaintiff's area of confinement and that DHEC inspects the facility on a regular basis. [Doc. 40-1 at 10–11; Doc. 40-2 ¶ 12.] Moreover, every morning inmates are provided with a mop, broom, dustpan, and disinfectant to clean their cells. [*Id.* ¶ 13.]　Captain Jones averred under oath that Plaintiff's cell has windows to allow in natural light and light fixtures, which are often broken by the inmates but fixed as soon as possible. [*Id.* ¶ 14.] Further, Plaintiff has been detained in a single cell because inmates who are charged with murder, like Plaintiff, are initially detained alone to be evaluated and determine whether the inmate can be placed in general population. [*Id.* ¶ 10.] Plaintiff has remained detained in a single cell because his behavioral issues with other inmates and his repeated threats against staff members, particularly female staff members. [*Id.*] Defendants have determined that placing Plaintiff in general population would constitute a security risk.　Finally, Defendants argue Plaintiff has failed to demonstrate any harm or injury resulting from the conditions of his

confinement. The Court agrees Plaintiff has failed to establish a violation of his constitutional rights with respect to the conditions of his confinement.

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988). To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)). Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless. *Bell*, 441 U.S. at 539. However, while the purpose of pretrial confinement is to ensure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Id.* at 539–40.

In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870. Under the Eighth Amendment, protection against cruel and unusual punishment

12

includes protection against inhumane conditions of imprisonment. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). To determine whether a prison official has violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components). "What must be established with regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

During the time period set forth in the Complaint, Plaintiff was a prisoner in a county detention center, not a guest in a hotel, and it should be expected that conditions in such a setting are often times less than ideal. *See Bell*, 441 U.S. at 537 ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel.").

Further, Plaintiff has failed to allege or demonstrate any serious physical or mental injury resulting from the conditions of which he complains or that there was a significant risk of harm from the challenged conditions. *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical

13

injury."); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) ("[T]o demonstrate that a deprivation is extreme enough to satisfy the objective component of an Eighth Amendment claim, a prisoner must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." (citations and internal quotation marks omitted)).   While Plaintiff alleges that the poor lighting caused him eye strain and the ventilation caused respiratory issues and nausea, courts have held that such injuries fail to state a serious injury.   *See Gannon v. Cent. Va. Reg'l. Jail*, Case No. 7:08-cv-394, 2008 WL 2853629, at *1 (W.D. Va. July 22, 2008) (collecting cases discussing nausea, chest pains, fatigue, headaches, breathing problems). Therefore, Plaintiff's allegations about the conditions at ACDC are insufficient to raise a genuine issue of fact as to whether any of his constitutional rights were violated.   *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that changes in conditions of confinement and the denial of privileges are matters that every prisoner can anticipate and are necessarily functions of prison management and must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently).

Moreover, Defendants have averred their actions with respect to keeping Plaintiff in a single cell was in keeping with prison protocol for observing new inmates and maintaining security. [Doc. 40-2 ¶ 10.] Moreover, Captain Jones testified that Plaintiff has been allowed access to outdoor exercise and telephones per regulation. [Id. ¶ 11.]  As noted, prison regulation infringing a prisoner's constitutional rights is valid if the regulation "is reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In *Turner*, the United States Supreme Court articulated a four-part test to

14

determine whether a prison regulation is reasonable,[5] but because Plaintiff does not challenge the validity of ACDC's regulations, dispute the behavioral issues reported by Defendants or allege any serious injury as a result of the regulations, the Court has no basis for finding the regulations unreasonable.  Consequently, Defendants' motion for summary judgment should be granted as to Plaintiff's conditions of confinement claims.

**Claims Regarding Mail and Telephone**

While Plaintiff's mail claim is unclear, the Court has liberally construed it as Defendant confiscating his mail.[6]  With regard to this claim, Plaintiff has not established a violation of his constitutional rights.  Generally, a prisoner enjoys a First Amendment right to receive and send mail, but prison officials may adopt regulations that impinge on a prisoner's constitutional rights if those regulations are "reasonably related to legitimate penological interests."  *Turner,* 482 U.S. at 89.  Legitimate penological interests include preserving prison security and maintaining order and discipline.  Moreover, in noting the delicate nature of prison management, the Supreme Court has "afforded considerable deference to the determinations of prison administrators who, in the interest of security, regulate the relations between prisoners and the outside world."  *Thornburgh v. Abbott*, 490 U.S. 401, 408 (1989) (citation omitted).

---

[5] The four factors are (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation.  *Turner*, 482 U.S. at 89–91 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

[6] As noted, to the extent this claim deals with grievances, which it primarily does, Plaintiff cannot state a cognizable § 1983 claim.

The Fourth Circuit, in *Altizer v. Deeds*, 191 F.3d 540, 547–48 (4th Cir. 1999), held "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and, therefore, constitutional . . . ." However, in a footnote, the court noted "[i]nspecting an inmate's legal mail may implicate the inmate's Sixth Amendment right to communicate freely with his attorney in a criminal case." *Id.* at 549, n.14 (citing *Wolff v. McDonnell*, 418 U.S. 539, 575 (1974)). Legal mail may not be opened outside of the presence of the prisoner-addressee. *See Wolff*, 418 U.S. at 575. However, to state a claim for a constitutional violation, a plaintiff must show actual injury by the opening. *Lewis v. Casey*, 518 U.S. 343, 352–54 (1996). To show an actual injury, an inmate must "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353. The prisoner must make specific allegations as to the actual injury sustained. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (holding the plaintiff failed to identify any actual injury resulting from official conduct); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993) (holding the plaintiff had a "basic requirement that he show specific harm or prejudice from the allegedly denied access").

Here, even assuming Defendants opened the mail, which is not specifically alleged in the Complaint and which the Defendants specifically deny, Plaintiff fails to allege specific facts that would tend to show a pending non-frivolous legal case, or any other legal matter, has been adversely affected due to his mail allegedly being opened and read outside his presence. Plaintiff does not allege his access to the courts has been harmed in any way and makes no specific allegations to support his claim of confiscation. Moreover, Defendants submitted multiple affidavits that they have not interfered with Plaintiff's mail. [*E.g.*, Doc. 40-2 ¶ 4; Doc. 40-3 ¶ 4; Doc. 40-4. ¶ 4.] Finally, Plaintiff's claim centers around

16

Defendant's confiscation of his grievances, which as discussed below, is not a cognizable claim.

To the extent Plaintiff alleges claims pursuant to other provisions of the Constitution, such claims likewise do not provide him any relief because his claims are both frivolous and fail to state a claim upon which relief may be granted.  Plaintiff does not allege that any confidential correspondence with his attorney was disclosed, causing Plaintiff to be deprived of effective assistance of counsel.  *Cf. United States v. Stotts*, 925 F.2d 83, 86–88 (4th Cir. 1991) (noting the contours of prison inmates' constitutional rights are imprecise, upholding the Bureau of Prisons' regulations regarding opening and reading mail, and noting that North Carolina's different approach to legal mail was not evidence that the Bureau of Prisons' method was unconstitutional).  To the extent Plaintiff alleges he was deprived of his property, loss of property caused by negligence of prison officials is not a deprivation within the meaning of the Due Process Clause.  *Daniels v. Williams*, 474 U.S. 327, 331–34 (1986).  Moreover, the Fourth Amendment is generally not applicable to searches of prison cells, and prisoners have no legitimate expectation of privacy in their possessions.  *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984).  Even liberally construing the Complaint, Plaintiff's alleged facts do not state cognizable constitutional claims, and his claims are frivolous.

As to Plaintiff's claims that he has not been allowed to use the telephone, prisoners have no constitutional or federal statutory right to the use of a telephone while in prison. *U.S. v. Alkire*, 82 F.3d 411 (4th Cir. 1996) (unpublished table decision).  Moreover, Plaintiff's alleged decision to represent himself in his underlying criminal trial does not entitle him to special provisions within the prison, such as additional use of the telephone

17

or access to a law library. *See Godfrey v. Danville City Jail*, Case No. 7:06-cv-360, 2006 WL 1805855 (W.D. Va. June 28, 2006). Plaintiff does not allege that he has been unable to communicate with court appointed counsel for his underlying case, even if he wishes to represent himself. *See id.* Although pre-trial detainees have the right of access to the courts, they do not have the right to any particular kind of access, including "unlimited telephone use." *Benzel v. Grammar*, 869 F.2d 1105, 1008 (8th Cir. 1989). Therefore, the Court finds that Plaintiff fails to demonstrate a constitutional violation giving rise to a claim under § 1983 and summary judgment on this claim is appropriate.

**Claims Regarding Grievances**

To the extent Plaintiff alleges Defendants prevented Plaintiff from filing a grievance by confiscating his grievances or forcing him to buy stamps, this bare allegation, even accepted as true, fails to state a plausible claim for a violation of any constitutional right. The law is well settled that there is no constitutional right to a grievance procedure. *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977). Even if the prison provides for a grievance procedure, violations of those procedures do not amount to a civil rights cause of action. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (dismissing plaintiff's claim that he was retaliated against when he was barred access to the grievance process because "the Constitution creates no entitlement to grievance procedures or access to any such procedure"); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (holding prison official's failure to comply with state's grievance procedure is not actionable under § 1983); *Doans v. Rice*, 831 F.2d 1057 (4th Cir. 1987) (noting inmate grievance procedures are not constitutionally required) (unpublished table decision). Thus, even if

Defendants confiscated or otherwise hindered Plaintiff in his grievances, Plaintiff has not stated a constitutional claim.

**Eleventh Amendment Immunity**

Plaintiff's claims against Defendants in their official capacities must be dismissed. The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacities from liability for monetary damages under 42 U.S.C. § 1983. *Id.* It is well-established in this state [of South Carolina] that a sheriff's office is an agency of . . . the state," such that "a suit against the sheriff's office is a suit against the state." *Carroll v. Greenville Cnty. Sheriff's Dep't*, 871 F. Supp. 844, 846 (D.S.C. 1994) (citing *Gulledge v. Smart*, 691 F. Supp. 947 (D.S.C. 1988)). As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment.

**Qualified Immunity**

19

Defendants also argue they are entitled to qualified immunity. [Doc. 40-1 at 15.] The Court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[] and . . . whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Defendants violated Plaintiff's constitutional rights.  Therefore, Defendants are entitled to qualified immunity

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 27, 2014
Greenville, South Carolina